MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 176
Docket:      Yor-18-513
Argued:      October 8, 2019
Decided:     December 30, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

DARREN JOHNSON

v.

YORK HOSPITAL

HJELM, J.

[¶1] Darren Johnson, a former employee of York Hospital, appeals from a summary judgment entered in favor of the hospital by the Superior Court (York County, *O'Neil, J.*) on Johnson's claims of a hostile work environment and gender discrimination prohibited by the Maine Human Rights Act and unlawful retaliation in violation of the Maine Whistleblower's Protection Act. Johnson contends that the court erred when it concluded that he failed to present evidence that (1) he had been subjected to a hostile work environment arising from sexual harassment; (2) he was terminated from the hospital in retaliation for complaints he had made about hospital employees; and (3) he was the victim of gender-based discrimination. We find no error and affirm the judgment.

## I. BACKGROUND

[¶2] We draw the following account of this case from both the procedural record and the record on summary judgment, which we view in the light most favorable to Johnson as the nonmoving party. *See Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242.

[¶3] In August of 2011, the hospital hired Johnson as a part-time MRI technician. When he was hired, Johnson was not promised full-time employment but believed that he would be able to work more hours or be placed in a full-time position if the opportunity arose. In 2013, a CAT scan technician position became available at the hospital. The position was not advertised, and Johnson did not apply for it, but he found out later that the position was filled by someone with less experience than he had. The record does not indicate the gender or any other characteristics of the person who was hired for the position.

[¶4] In June of 2013, Johnson learned that a complaint had been made against him by a co-worker arising from an interaction between them while the co-worker was a patient at the hospital. Johnson denied any wrongdoing. Nonetheless, because of the incident, a representative of the hospital's human

resources office requested that the co-worker be assigned a parking space close to the hospital building because of "the unpredictability of Johnson's actions."

[¶5] In February of 2014, Johnson met with his supervisor for an annual performance evaluation. At the meeting, the supervisor told Johnson that he needed "to work on" his communication style, act less defensively, and improve his relationships with other staff members. Johnson did not agree with that assessment. According to Johnson, during the meeting the supervisor told him, "I can't stand talking to you anymore. You remind me of my ex-husband." The supervisor later explained to Johnson that he reminded her of her ex-husband because Johnson had been yelling at her.[1] After the meeting, Johnson and his supervisor had very limited contact with each other, and Johnson does not contend that the supervisor engaged in any other inappropriate conduct.

[¶6] Three months after the performance evaluation, Johnson became involved in a disagreement with a nurse about a patient's care. Following the incident, Johnson overheard the nurse tell a third person that she would like to "smack" Johnson.

[¶7] On May 30, 2014, Johnson met with a human resources officer and complained about the statements made by the supervisor and the nurse.

---

[1] Johnson admits that the supervisor explained this to him but denied that he had yelled at her.

Approximately ten days later, Johnson clarified to the human resources department that he felt he was the victim of retaliation and had been sexually harassed by his supervisor because of her "ex-husband" comment. Given his allegations, Johnson was advised several times to submit his complaint to the hospital president through a formal grievance process, but he never did so.

[¶8] A member of the human resources staff thoroughly investigated Johnson's complaint and interviewed several people about Johnson's interactions with staff and patients. Among other things, the investigator interviewed a physician who described an incident in which Johnson had acted "inappropriate[ly] and aggressive[ly]" toward the nurse who he claimed wanted to "smack" him, to the point where the physician intervened by escorting Johnson from the scene. The report concluded that Johnson had engaged in an "ongoing pattern of inappropriate behavior," although Johnson denied having acted improperly.

[¶9] On June 19, Johnson met with his supervisor and the hospital's "Leader of Staff Experiences," which is a position within the human resources office. Based on this meeting and the investigation that had been conducted into Johnson's complaints, the Leader concluded that "Johnson was creating a hostile work environment" at the hospital. As a result, the Leader

recommended to the hospital's president "that Johnson's employment with York [Hospital] be terminated based upon safety concerns relating to patients and staff."[2]  Johnson was terminated on July 5, 2014.

[¶10]  During the time he was employed at the hospital, Johnson did not consider quitting his job because of any conduct by co-workers; he did not refrain from going to work because of any concern for harassment or hostility by others; and he wanted to continue working at the hospital for as long as possible.

[¶11]  After the hospital terminated Johnson's employment, he filed a discrimination complaint against the hospital with the Maine Human Rights Commission.  *See* 5 M.R.S. § 4611 (2018).  The Commission ultimately determined that there were no reasonable grounds to find that the hospital had discriminated against Johnson on the basis of sex, that he had been subjected to a hostile work environment, or that the termination was retaliatory.  *See* 5 M.R.S. § 4612(1), (2) (2018).

---

[2] This assertion is contained in the hospital's statement of material fact. *See* M.R. Civ. P. 56(h)(1). Johnson's response was a qualification, *see* M.R. Civ. P. 56(h)(2), but the accompanying explanation states only that, while this was the hospital's stated reason for termination, he disputes the accuracy of the complaints gathered during the HR investigation "and maintains that his complaints against others and [his supervisor's] dislike of him were the driving forces behind his termination." Johnson offered no record citations for this response, and the hospital's assertion is therefore deemed admitted. *See* M.R. Civ. P. 56(h)(4).

6

[¶12]  In January of 2017, Johnson filed a complaint against the hospital in the Superior Court alleging that the hospital had created a sexually objectionable, hostile work environment in violation of the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551-4634 (2018); that the hospital had retaliated against Johnson in violation of the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831-840 (2018); and that the hospital had fired Johnson on the basis of his sex also in violation of the MHRA.

[¶13]  The hospital moved for entry of a summary judgment on all of Johnson's claims.  *See* M.R. Civ. P. 56.  After holding a hearing, the court granted the motion.  Applying the proper standard for evaluating the record on summary judgment, the court concluded that, as a matter of law, the incidents underlying Johnson's claim of a hostile work environment did not rise to the level necessary to support such a claim; that Johnson's WPA claim failed because there was no evidence of a causal connection between Johnson's complaints about his co-workers' conduct and the hospital's decision to terminate him; and that Johnson had not presented evidence that the adverse employment action instituted by the hospital was based in whole or in part on his gender.

[¶14]  From the judgment, Johnson filed a timely appeal.  *See* 14 M.R.S.

§ 1851 (2018); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶15]  We review the summary judgment de novo to determine if the

record generates any genuine issue of material fact, viewing the evidence in the

record and all reasonable inferences in favor of Johnson as the nonmoving

party.  *Grant*, 2016 ME 85, ¶ 12, 140 A.3d 1242.  "A fact is material if it has the

potential to affect the outcome of the suit, and a genuine issue of material fact

exists when a fact-finder must choose between competing versions of the truth,

even if one party's version appears more credible or persuasive."  *Angell v.*

*Hallee,* 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).  A defendant

who moves for a summary judgment bears the burden of establishing, on the

basis of facts that are not subject to genuine dispute, that it is entitled to

judgment as a matter of law.  *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34,

¶ 26, 133 A.3d 1021.

A.    Hostile Work Environment

[¶16]   Johnson's claim that he was subjected to a hostile work

environment arising from sexual harassment is based on evidence of two

incidents: his supervisor's comment that she could not "stand" talking to him

8

because he reminded her of her ex-husband; and, more than three months later, a co-worker's statement to a third person that she wanted to "smack him." Johnson contends that the court erred by concluding as a matter of law that these alleged statements did not combine to create a hostile work environment based on sexual harassment within the meaning of the MHRA.

[¶17]  In pertinent part, the MHRA states, "It is unlawful employment discrimination, in violation of this Act, . . . [f]or any employer to . . . discharge an employee or discriminate with respect to . . . terms, conditions . . . or any other matter directly or indirectly related to employment . . . because of [the employee's] . . . sex  . . . ."  5 M.R.S. § 4572(1)(A).  Therefore, a claim of discrimination based on a hostile work environment created by sexual harassment comprises the following elements:

> (1) that [the plaintiff] is a member of a protected class; (2) that [the plaintiff] was subject to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897.

[¶18]  The question of whether a work environment is actionably hostile requires a consideration of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 23, 824 A.2d 48 (quotation marks omitted).  To be actionable, the discriminatory conduct must be "sufficiently severe or pervasive [to create] a hostile or abusive working environment."  *Nadeau v. Rainbow Rugs, Inc.*, 675 A.2d 973, 976 (Me. 1996).  "The standard requires an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive."  *Id.*; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998) (discussing claims of workplace sexual harassment that violates the applicable provisions of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (LEXIS through Pub L. No. 116-77)).

[¶19]  Even when the evidence is viewed in the light most favorable to Johnson, the two separate incidents underlying his discrimination claim do not, as a matter of law, rise to the level of sexual harassment that resulted in an actionably hostile or abusive work environment.  The second incident, when

Johnson overheard a co-worker tell someone that she wanted to "smack" Johnson, was not even arguably connected to Johnson's gender.

[¶20] That leaves only the first incident. An isolated incident may result in workplace discrimination, but only if that incident is "extremely serious." *Faragher*, 524 U.S. at 788; *see also Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 93 (1st Cir. 2018). The single comment of Johnson's supervisor that she could not tolerate talking with him and that he reminded her of her former husband is not of that magnitude.

[¶21] For these reasons, the court correctly granted a summary judgment in favor of the hospital on Johnson's discrimination claim based on allegations of sexual harassment.

B.      Whistleblower Retaliation

[¶22] Johnson next contends that the court erred when it concluded that the record on summary judgment did not include evidence that the hospital's decision to terminate his employment was in retaliation for complaints he had made about other employees' conduct toward him and therefore was in violation of the WPA. *See* 26 M.R.S. § 833(1)(A)-(B).

[¶23] To establish a prima facie case for retaliation pursuant the WPA, an employee must show that (1) he "engaged in activity protected by the

statute, (2) [he] was the subject of adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Sullivan v. St. Joseph's Rehab. & Residence*, 2016 ME 107, ¶ 14, 143 A.3d 1283 (quotation marks omitted). "In the context of the summary judgment analysis, the employee's burden of proving a prima facie case of retaliation is relatively light, and requires only a small showing that is not onerous and is easily made." *Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 14, 126 A.3d 1145 (citation omitted) (quotation marks omitted). An employee's protected activity is causally connected to the adverse employment action "when the alleged retaliation was a substantial, even though perhaps not the only, factor motivating the adverse employment action." *Id.* ¶ 16 (quotation marks omitted). Any relevant evidence, including temporal proximity, may be considered in determining whether there is an arguable causal nexus. *See Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 22, 129 A.3d 944; *Brady*, 2015 ME 143, ¶ 16, 126 A.3d 1145; *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 21, 45 A.3d 722.

[¶24] The record on summary judgment affirmatively establishes the hospital's stated reason for terminating Johnson's employment—specifically, "safety concerns relating to patients and staff" as created by Johnson's behavior.

The termination decision followed a "thorough" investigation of Johnson's own complaints—an investigation that revealed that Johnson himself had engaged in an "ongoing pattern of inappropriate behavior." A human resources officer at the hospital (the Leader of Staff Experiences) relied on the results of the investigation, concluded that Johnson had created a "hostile work environment," and recommended to the hospital's president that Johnson be fired because Johnson posed "safety concerns" for patients and staff. Johnson's employment was then terminated.

[¶25] In his summary judgment filings, Johnson disputed the truthfulness of the accounts of his own behavior provided to the hospital's investigator. That dispute, however, does not transform the hospital's rationale for its decision to terminate Johnson's employment into one that was illegal. Rather, on this record, as the trial court astutely observed, Johnson's dispute shows only that the reports of Johnson's intolerable behavior may have been incorrect. Thus, it remains established that Johnson was terminated not for retaliatory reasons but based on investigated reports of his own untoward conduct. Therefore, the record does not generate a prima facie case of

retaliation, and the court correctly entered a summary judgment against Johnson on his WPA claim.[3]

C.      Sex Discrimination

[¶26]   Johnson finally contends that the court erred by granting a summary judgment on his claim of workplace sex discrimination that resulted in his discharge from employment.  As framed by Johnson, the factual predicate for this claim consists of the hospital's 2013 decision to fill a CAT technician position with another person and his supervisor's comment in February 2014, when she disparagingly compared Johnson to her ex-husband.  In its order granting a summary judgment for the hospital, the court concluded that the former aspect of Johnson's claim was time-barred and that the latter did not reflect gender-based animus.

[¶27]   Set out in the MHRA, the legal basis for Johnson's claim of gender discrimination is the same as the law that underlies his claim of a hostile work

---

[3] To the extent that Johnson suggests that there is evidence of causation based on the temporal proximity between the date of his complaints and the date he was fired, that argument fails on this record because, as we discuss in the text, the evidence establishes that the hospital terminated his employment for other reasons, namely, the reports of Johnson's own behavior that the hospital received from other employees.  We therefore need not address whether temporal proximity alone is sufficient to generate a dispute of material fact as to causation, allowing a plaintiff to survive a motion for summary judgment.  *See Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 352 (1st. Cir. 2018) (collecting Maine cases and construing Maine law to require more than temporal proximity to make out a prima facie case of causation in WPA retaliation cases).

environment: "It is unlawful employment discrimination, in violation of this Act, . . . [f]or any employer to . . . discharge an employee . . . because of [the employee's] . . . sex . . . ." 5 M.R.S. § 4572(1)(A).

[¶28] In claims of sex discrimination, Maine law is still based on the burden-shifting model announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973). *See Me. Human Rights Comm'n v. Dep't of Corr.,* 474 A.2d 860, 866-67 (Me. 1984)*; Me. Human Rights Comm'n. v. Auburn,* 408 A.2d 1253, 1261-62 (Me. 1979). Pursuant to that framework, the plaintiff has the initial burden of production and must present evidence that he or she is a member of a protected class, was qualified for the position at issue, and was adversely treated by the employer based on gender. *Me. Human Rights Comm'n v. Dep't of Corr.,* 474 A.2d at 867. If, in the context of summary judgment motion practice, the employee meets the burden of production for "these three elements, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory basis for its action." *Daniels*, 2012 ME 80, ¶ 15, 45 A.3d 722. Finally, if the employer presents such evidence, "the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason is pretextual or irrelevant and that the unlawful discrimination brought about the adverse employment action." *Doyle*, 2003 ME 61, ¶ 15, 824 A.2d 48.

[¶29]  In the context of summary judgment motions in claims of WPA retaliation, we have dispensed with the *McDonnell Douglas* framework because once a plaintiff produces evidence that satisfies the three elements of the initial step in that process, there is no reason to go further; the plaintiff has then made out a prima facie case, and the remaining steps are useful only at trial where the burden of persuasion is at issue, and not the burden of production, which is the dispositive question raised in a summary judgment motion.  *See Brady*, 2015 ME 143, ¶¶ 35-36, 126 A.3d 1145.  We have not had occasion to consider whether there is any reason *not* to disengage the *McDonnell Douglas* paradigm from sex-based discrimination claims.  This case also does not create such an occasion because, as we now explain, the record on summary judgment does not allow Johnson to satisfy even the initial requirements of that framework.

[¶30]  The record is not sufficient to generate a triable contention that Johnson was terminated from employment by the hospital because he is male. As we have discussed above, the record establishes the basis for that adverse employment action, namely, Johnson's seriously concerning and disruptive conduct, which created a hostile work environment for other employees and concerns for the safety of others—patients and staff alike.

[¶31] Beyond that, regarding the specific factual grounds for this claim, the record is devoid of any evidence suggesting that, when the hospital filled the CAT technician position in 2013, it passed over Johnson because of his gender. The record reveals nothing more than that the person selected by the hospital was less qualified than Johnson. On that meager evidence, a fact-finder could not conclude that Johnson's sex had anything to do with the hospital's hiring decision.[4]

[¶32] With respect to the second factual aspect of this claim, as we have noted, the court concluded that the supervisor's comment that Johnson reminded her of her former husband could not demonstrate that the ultimate termination decision was based in whole or in part on gender. At oral argument, the hospital conceded that, for purposes of a summary judgment analysis, the supervisor's statement could be viewed as reflective of sex-based animus. Even so, the question is whether the record contains evidence of a causal connection between that isolated statement and Johnson's discharge five months later.

---

[4] The hospital argues alternatively, and the court concluded, that this part of Johnson's claim was time-barred. *See* 5 M.R.S. § 4613(2)(C) (2018). Because there is no evidence of sex-based discrimination in the first place when the hospital decided to assign someone other than Johnson to the CAT technician position, we need not and do not reach that issue.

[¶33]  The record contains no such evidence.  Johnson was fired because a member of the hospital's human resources department reviewed the results of a thorough personnel investigation that revealed information about Johnson's disruptive and unacceptable workplace behavior, and then, because of the safety concerns revealed by the investigation, recommended to the hospital's president that Johnson be terminated.  Further, there is no evidence that Johnson's immediate supervisor, who had made the comment, played any role in the decision-making process that led to Johnson's termination.[5]

[¶34]  In concluding that the record does not generate a prima facie case of sex-based discrimination, we remain "mindful that discrimination claims in general are often difficult to assess at the summary judgment stage, and particularly that the issue of whether an employee has generated an issue of fact regarding an employer's motivation or intent is one heavily dependent on the individual facts before the court."  *Daniels*, 2012 ME 80, ¶ 15, 45 A.3d 722 (quotation marks omitted); *see Cummings v. Standard Register Co.*, 265 F.3d 56,

---

[5]  The "cat's-paw" theory of employer liability may allow an employer to be held liable for employment discrimination even if the decision-maker was unaware of the employee's protected activity or status.  *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 18 n.4, 129 A.3d 944.  That theory "requires evidence that an agent of the employer with a retaliatory motive intentionally influenced another agent, who is unaware of the protected activity, to take adverse employment action against the employee.  The improper motive is thereby imputed to the decision-maker as evidence of a causal connection between the protected activity and the adverse action." *Id.*  Johnson does not invoke that theory, and this record on summary judgment would not support it in any event.

63 (1st Cir. 2001) (recognizing that "discrimination is often subtle and pervasive," so plaintiffs must be able to rely on circumstantial evidence to show discrimination); *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987) (same). Nonetheless, the record in this case does not generate a triable contention that Johnson was fired because he is male.

## III. CONCLUSION

[¶35] In summary, the court did not err by granting a summary judgment in favor of York Hospital on all of Johnson's claims of discrimination in the workplace.

The entry is:

Judgment affirmed.

---

Sarah A. Churchill, Esq. (orally), Nichols & Churchill, P.A., Portland, for appellant Darren Johnson

Mark V. Franco, Esq., and Jeana M. McCormick, Esq. (orally), Drummond Woodsum, Portland, for appellee York Hospital

York County Superior Court docket number CV-2017-25
FOR CLERK REFERENCE ONLY