STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, SS.                                    CIVIL ACTION
                                                  DOCKET NO. CV-2020-159

LORI CHURCHILL,                          ]
                                         ]
        Plaintiff,                       ]
                                         ]
v.                                       ]        ORDER ON MOTION FOR
                                         ]        SUMMARY JUDGMENT
THE AROOSTOOK MEDICAL CENTER             ]
d/b/a NORTHERN LIGHT A.R. GOULD          ]
HOSPITAL                                 ]
                                         ]
        Defendant                        ]

This matter comes before the Court on the motion for summary judgment filed by defendant The Aroostook Medical Center d/b/a Northern Light A.R. Gould Hospital ("TAMC" or the "Defendant"). Plaintiff Lori Churchill (the "Plaintiff") alleged in her three-count Complaint that TAMC committed unlawful employment discrimination against her (1) because of her age in violation of the Maine Human Rights Act (the "MHRA"), 5 M.R.S. § 4572(1)(A) (the Plaintiff's "Age Discrimination Claim"); (2) because she opposed a practice that is unlawful under the MHRA in violation of 5 M.R.S. §§ 4572(1)(E) & 4633(1) (the Plaintiff's "MHRA Retaliation Claim"); and (3) because she reported to TAMC what she reasonably believed was a violation of Maine or federal law, 26 M.R.S. § 833(1)(A), which constitutes unlawful employment discrimination under the MHRA, 5 M.R.S. § 4572(1)(A) (the "WPA Retaliation Claim"). TAMC seeks summary judgment in its favor on all three counts.

## STANDARD OF REVIEW

The Court will grant a properly supported motion for summary judgment if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. A genuine issue exists "when there is sufficient evidence for a fact-finder to choose between competing versions of the fact," *Id.* ¶ 11, "even if one party's version appears more credible or persuasive." *York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 16, 200 A.3d 803.

The moving party has the initial burden of proving the absence of any genuine, material factual issues through a properly supported statement of material facts (S.M.F.) and of proving that the facts presented in that S.M.F., left uncontroverted, would entitle the moving party to judgment as a matter of law at trial. *See* M.R. Civ. P. 56(e); *Jennings v. Maclean*, 2015 ME 42, ¶ 5, 114 A.3d 667; *see also* 3 Harvey & Merritt, *Maine Civil Practice* § 56:6 at 242 (3d, 2018-2019 ed.) ("The initial burden under Rule 56 lies with the moving party to demonstrate clearly the absence of a genuine issue of material fact."). In determining whether the summary judgment record reveals a genuine dispute of material fact, the Court examines the facts, including any reasonable inferences that may be drawn therefrom, in the light most favorable to the nonmoving party. *See e.g.*, *McCandless v. Ramsey*, 2019 ME 111, ¶ 11, 211 A.3d 1157; *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242; *Maine Civil Practice* § 56:6 at 242. The question of whether the moving party has initially shown that he or she is entitled to judgment as a matter of law,

depends on whether the moving party bears the ultimate burden of proof on the particular claim or defense at issue on the motion.

The Defendant has moved for summary judgment on the grounds that Plaintiff is unable to prove all of the elements of her claims. Plaintiff would bear the ultimate burden of proving the elements of her claims. To meet its initial burden as the moving party, Defendant must show either that its S.M.F. presents certain facts that would refute an essential element of Plaintiff's claims, or which indicate that Plaintiff is unable to muster the necessary evidence to set forth a prima facie case. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194-97 (5th Cir. 1986); *see also Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 9, 222 A.3d 1063 (a defendant moving for summary judgment bears the initial burden of establishing that no genuine dispute of material fact exists and that undisputed facts entitle it to a judgment as a matter of law); M.R. Civ. P. 56(e)-(h). If the Defendant satisfies this burden, the Plaintiff must respond by producing the evidence necessary to "establish a prima facie case for each element of [his or her] cause of action." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774. This standard requires only that the Plaintiff produce "enough evidence to allow the [trier-of-fact] to infer the fact at issue and rule in the party's favor." *Id.* If the Plaintiff fail to satisfy this burden as to any essential element of her cause of action, the Defendant is entitled to summary judgment on that claim. *Id.* ¶ 12; M.R. Civ. P. 56(e).

When a motion for summary judgment is made and supported as provided in Rule 56, "an adverse party may not rest upon the mere allegations or denials of that party's pleading but must respond by affidavits or as otherwise provided in [Rule 56] setting

forth specific facts showing that there is a genuine issue for trial." *M.R. Civ. P. 56(e)*. M.R. Civ. P. 56(h)(2) provides that a party who opposes a motion for summary judgment must "submit with its opposition a separate, short, and concise opposing statement." In this opposing statement of material facts (Opp. S.M.F.) the nonmoving party must make statements that "admit, deny, or qualify" each item of the moving party's S.M.F, beginning each statement with the designation "Admitted," "Denied," or "Qualified." If the nonmoving party chooses to "deny" or "qualify" an assertion in the S.M.F., the party must support each denial or qualification with a specific citation to evidentiary material that supports the assertion. The nonmoving party's Opp. S.M.F. may also include objections to factual assertions in the moving party's S.M.F., with a brief statement of the basis for the objection. The nonmoving party may also choose to submit a separate statement with any additional facts (S.A.F.), set forth in separate numbered paragraphs and supported by proper record citations, which the party contends raise a disputed issue for trial. The court "need not consider any additional facts when, . . ., they are improperly commingled in the nonmoving party's paragraphs responding to the moving party's material facts, . . ., and are not set forth in a separate section of additional facts organized in separate numbered paragraphs added pursuant to Rule 56(h)(2)." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 11, 824 A.2d 48. The moving party's S.M.F. and the nonmoving party's Opp. S.M.F. and S.A.F. should be limited to factual matters and are not spaces for the parties to engage in legal arguments with each other on the merits of the issues. *See e.g., Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 4 n.2, 133 A.3d 1021.

4

In response to Defendant's S.M.F., Plaintiff filed "Supporting Statement of Material Facts" that consisted of three paragraphs of legal argument, and a "Summary of Facts" that set forth 21 paragraphs ostensibly in response to the Defendant's 152 paragraph Statement of Material Facts. Plaintiff's submission fails to comply with the protocol set forth in Rule 56 and explained by the court. Plaintiff did not respond *at all* to Defendant's SOMF paragraphs 18-152. Within the paragraphs included in Plaintiff's response to Defendant's SOMF, Plaintiff included improperly commingled legal arguments and commingle additional facts that went beyond admitting, denying, or qualifying the particular assertion in the S.M.F. being responded to. Many of Plaintiffs assertions also are not properly supported by references to competent evidentiary materials.

If the moving party's properly presented assertions are not controverted by proper record citations, they are deemed admitted. M.R.Civ.P. 56(h)(4). Self-represented litigants are held to the same standards as represented litigants. See, *Dufort v. Bangs*, 644 A.2d 6, 7 (Me. 1994) (citing *Uotinen v. Hall*, 636 A.2d 991, 992 (Me. 1994)). Accordingly, Defendant's SOMF paragraphs 18 through 152 are deemed admitted in their entirety.

## DISCUSSION

Plaintiff worked at TAMC in its Aroostook Cancer Care department. In June of 2016, the Plaintiff got into an argument at work with a physician of Middle Eastern and/or Egyptian descent during which she called him "a little brown man." As a result of Plaintiff's use of a racial slur, Yoosuf (Joseph) Saleem Siddiqui, TAMC's Vice President

5

of Human Resources, approved disciplinary action for the Plaintiff in the form of a final written warning.

In December of 2017, Brenda Baker, who was the Plaintiff's direct supervisor, received two separate complaints regarding the Plaintiff's rude and abrupt behavior and attitude at work. One complaint involved Plaintiff's attitude towards a patient and the patient's family member, and the other complaint involved her conduct towards a TAMC maintenance worker. Based on the two complaints, Ms. Baker determined that remedial action was appropriate. Ms. Baker knew of the Plaintiff's prior written final warning for calling a physician a "little brown man," so further disciplinary action would have likely resulted in a discharge. Because Ms. Baker felt the Plaintiff could correct her behavior with coaching, she conferred with Mr. Siddiqui and together they decided not to formally discipline the Plaintiff and instead to issue her a documented "coaching session."

In January of 2018, the Plaintiff complained to Mr. Siddiqui that she felt bullied by Ms. Baker, and that Ms. Baker gossiped about her and treated her less favorably than others. The Plaintiff said nothing about perceived age or other protected class discrimination or harassment. Mr. Siddiqui directed Jennifer Tweedie (who was Ms. Baker's immediate supervisor)[1] and Sherry Hitchcock (who worked with Mr. Siddiqui in Human Resources) to conduct an investigation. When Ms. Tweedie and Ms. Hitchcock interviewed the Plaintiff, she reiterated her prior complaints about Ms. Baker; she did

---

[1] Ms. Tweedie's name has since changed to Ms. Brewer. The Court will continue to refer to her as "Ms. Tweedie" in this Decision and Order.

6

not, however, claim that she felt bullied or treated poorly *because* of age or any other legally protected category under the MHRA.

During the investigation, the Plaintiff told Ms. Tweedie and Ms. Hitchcock that one time while Ms. Baker was helping to train a new employee, Ms. Baker told the Plaintiff to allow the employee to log onto the Plaintiff's computer using the Plaintiff's username and password. If true, this action by Ms. Baker would have been a violation of TAMC's computer use protocols. Ms. Hitchcock and Ms. Tweedie thereafter met with Ms. Baker as part of their investigation. Ms. Baker denied bullying the Plaintiff, and she further denied ever asking the Plaintiff to divulge her username and password to another employee or to let another employee work under the Plaintiff's log in credentials.

Ms. Hitchcock and Ms. Tweedie then separately interviewed other employees in the department, none of which corroborated the Plaintiff's complaints, and none of which gave them reason to believe that Ms. Baker harbored any discriminatory animus against Ms. Churchill because of age or any other legally protected status or class. One employee, however, said that the Plaintiff was often unpleasant, snapped at people frequently, and was not helpful when the employee asked her for help. Another said the Plaintiff was rude to Ms. Baker and didn't follow rules. The investigation also found that the Plaintiff had been argumentative and insubordinate with a physician.

Based on the totality of their interviews, Ms. Tweedie and Ms. Hitchcock concluded that Ms. Baker had not bullied or mistreated the Plaintiff. Ms. Hitchcock and Ms. Tweedie then met with the Plaintiff and Ms. Baker together. They asked the Plaintiff directly whether Ms. Baker had instructed her to give her username and password to the

7

new employee. The Plaintiff did not respond and instead rolled her eyes and made huffing noises. At the conclusion of the investigation, Ms. Hitchcock and Ms. Tweedie conferred with Mr. Siddiqui, and together they agreed to give the Plaintiff yet another final written warning for: being obstructive with the physician; making a serious but false accusation against Ms. Baker; and displaying rude and unprofessional behavior to Ms. Hitchcock and Ms. Tweedie when they met.

In late March of 2018, the Plaintiff complained again to Mr. Siddiqui about Ms. Baker. The Plaintiff did not tell Mr. Siddiqui that she believed she was being bullied or mistreated because of her age or any other legally protected status, or that she was being retaliated against for having reported what she believed to be a violation of a law or regulation, or because she had opposed any practice proscribed by the MHRA.

In early April of 2018, another maintenance worker complained to Ms. Baker about the Plaintiff's rude behavior. Ms. Baker brought this to the Plaintiff's attention, but the Plaintiff essentially shrugged it off.

Also in this same timeframe, the Plaintiff committed a HIPAA violation by giving discharge instructions and additional paperwork to the incorrect patient. Despite her two previous final written warnings — which would have justified immediate dismissal — Mr. Siddiqui and Ms. Baker gave the Plaintiff a third final written warning, this time with three days of suspension. The Plaintiff took the position that TAMC was ultimately to blame for her mistake.

In early summer of 2018, Nancy Allen became the Plaintiff's direct supervisor and Ms. Baker ceased having direct supervisory responsibility over the Plaintiff. Because the

Plaintiff was absent from work at the time, it was not until approximately mid-August of 2018 that Ms. Allen and the Plaintiff began meaningfully interacting with each other. Soon thereafter, Ms. Allen complained to Ms. Baker that the Plaintiff was rude and abrupt with her, and that she was often not helpful to Ms. Allen or to others. For example, Ms. Allen said that the Plaintiff had told her something to the effect that, "it's high time you learn to do the job." Ms. Allen also said that when she told the Plaintiff she was trying her best to learn her job, but that she might need to ask the Plaintiff a few questions, the Plaintiff replied, "I don't have time for questions."

Mr. Siddiqui and Ms. Tweedie met with the Plaintiff on September 11, 2018, to investigate Ms. Allen's complaints. Mr. Siddiqui asked the Plaintiff if she told Ms. Allen, "I don't have time for questions," in response to Ms. Allen saying that she would sometimes have to ask the Plaintiff some questions. The Plaintiff admitted saying that. The Plaintiff then said, "while in the discharge chair, I don't have time to train other people." When asked about frequently rolling her eyes at people, the Plaintiff admitted that she did it but added that she could not change that. The Plaintiff said it is not her personality to be happy all day, and, to paraphrase, that she "can't worry about offending someone all day."

Mr. Siddiqui went on to explain that the Plaintiff was overheard speaking to someone at Northern Maine Medical Center ("NMMC") in an unprofessional manner regarding the subject of booking patients. The Plaintiff said others in the department also told NMMC that they could not book patient appointments that way, at which point Ms. Tweedie said that perhaps the problem is not what the Plaintiff says, but how she

9

says it. The Plaintiff again said it is not her nature to be a happy person all the time, and that Mr. Siddiqui and Ms. Tweedie should try to sit in her chair and do her job and see if they could smile all of the time.

Mr. Siddiqui then brought up the fact that the Plaintiff had been using her cell phone for personal reasons while at work. The Plaintiff admitted to recently making a lot of personal calls at work, but she deflected blame by saying that others in the office were also frequently using their phones to text, and if Ms. Allen wanted to bring this topic up, Ms. Allen was "making a big mistake."

After the meeting, Ms. Tweedie concluded that the Plaintiff simply could not or would not acknowledge that there were any problems with her demeanor or conduct in the workplace and that she was not interested in trying to improve her behavior. Ms. Tweedie reasoned that standing alone, the Plaintiff's disrespectful and unprofessional conduct toward her supervisor, Ms. Allen, as well as her general attitude and demeanor in the meeting with Mr. Siddiqui and herself, would have warranted termination of her employment. Ms. Tweedie further reasoned that beyond those issues, there was a history of behavioral problems with the Plaintiff, starting when she called a physician a "little brown man," and she had already been given three previous final written warnings. Ms. Tweedie also considered how the Plaintiff had significant personality conflicts with her previous supervisor, Ms. Baker. Ms. Tweedie did not think it was in the best interest of the department to continue this state of affairs.

Mr. Siddiqui reasoned that the statements made by the Plaintiff to Ms. Allen, standing alone, justified termination, to say nothing of the disrespectful attitude directed

10

to Ms. Tweedie and himself during the interview. Mr. Siddiqui further reasoned that the Plaintiff had three previous final written warnings, had a history of rude and unprofessional behavior, and despite being given many opportunities, displayed no indication that she intended to improve. Mr. Siddiqui also considered how the Plaintiff's workplace behavior had long been negatively impacting morale in her department.

Mr. Siddiqui and Ms. Tweedie decided it was time to terminate the Plaintiff's employment. Ms. Tweedie sent the Plaintiff a short letter informing her that her employment was terminated. Mr. Siddiqui and Ms. Tweedie in each of their affidavits before the Court swear that for each of them, the decision to discharge the Plaintiff from employment had nothing to do with her age, any prior whistleblowing report by the Plaintiff, or by the Plaintiff's opposition to any practice proscribed by the MHRA and was instead based on the factors described above.

### WPA Retaliation Claim

A WPA retaliation claim consists of three elements: (1) the employee engaged in activity protected under the WPA; (2) the employee experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Pushard v. Riverview Psychiatric Ctr.*, 2020 ME 23, ¶ 15, 224 A.3d 1239, 1243. An employee's protected activity is causally connected to the adverse employment action when the alleged retaliation was a substantial, even though not the only, factor motivating the adverse employment action. *Johnson v. York Hosp*, 2019 ME 176, ¶ 23, 222 A.3d 624, 631. In the context of summary judgment motions in claims of WPA retaliation, Maine law has dispensed with the three-part, burden shifting *McDonnell Douglas*

11

framework. *Johnson*, 2019 ME 176, ¶ 29, 222 A.3d 624, 632. Summary judgment in favor of TAMC is therefore warranted unless the summary judgment record establishes that Plaintiff has produced evidence that satisfies these three elements of her WPA Retaliation Claim.

The Plaintiff testified at her deposition that her WPA Retaliation Claim is predicated on only two things. First, that the Plaintiff reported to management that her department needed more than one printer. Second, that the Plaintiff reported to management that Ms. Baker, her supervisor, allegedly instructed her to commit a HIPAA violation by virtue of telling the Plaintiff to allow the new employee to log into the Plaintiff's computer using the Plaintiff's username and password.

The Plaintiff admits, though, that to her best knowledge, there was no law or regulation that required her department to have more than one printer. Because the WPA requires proof that (among other things) the plaintiff made a good-faith report of what she reasonably believed to be a violation of a law or regulation, and because the Plaintiff admits that she had no knowledge or belief of any such law or regulation, the Plaintiff's WPA claim must fail as a matter of law. 26 M.R.S. § 833(1)(A) (an employee engages in protected activity when she "acting in good faith . . . reports . . . to the employer . . . what the employee has reasonable cause to believe is a violation of a law or rule").

Turning next to the Plaintiff's report to Ms. Tweedie and Ms. Hitchcock that Ms. Baker allegedly instructed her to commit a HIPAA violation, by virtue of telling the Plaintiff to allow the new trainee to login to the Plaintiff's computer under the Plaintiff's username and password: even if the Court were to assume that this report constituted

12

protected activity under the WPA, the Plaintiff's claim fails. The Plaintiff has not produced any admissible evidence in the record that would support a reasonable inference that the Plaintiff's report (which was allegedly made in January of 2018) played any role whatsoever (much less that it was a substantial motivating factor) in the decision to terminate her employment some 9-months later in mid-September of 2018. *See Johnson*, 2019 ME 176 at ¶ 23 (listing causation as an essential element of a WPA claim). This record reflects that decision to terminate the Plaintiff's employment was based upon many factors, including Plaintiff's disrespectful and unprofessional conduct toward her supervisor, her general attitude and demeanor in meeting with Mr. Siddiqui and Ms. Ms. Tweedie, her history of behavioral problems, including her calling a physician a "little brown man" and her history of displaying rude and unprofessional behavior. The court notes that Plaintiff had also been given three previous final written warnings related to her behavior and exhibited through her subsequent performance no intention to address those issues. Further, Mr. Siddiqui considered how Plaintiff's workplace behavior had long been negatively impacting morale in her department. Therefore, TAMC is entitled to summary judgment on this aspect of the Plaintiff's Complaint.

## Age Discrimination Claim

In absence of direct evidence of age discrimination Maine law still relies on the *McDonnell Douglas* three-part burden shifting framework. *Johnson*, 2019 ME 176, ¶ 28, 222 A.3d at 632. Pursuant to that framework, the plaintiff has the initial burden of production and must present evidence that unlawful age discrimination motivated the adverse employment action against the employee. *Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶ 15,

66 A.3d 7, 13. If the plaintiff meets that burden of production, the burden shifts to the employer to produce evidence of a legitimate, lawful reason for its action. *Id.* If the employer presents such evidence, the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason is pretextual and that age was a substantial motivating factor for the adverse employment action. *Johnson*, 2019 ME 176, ¶ 28, 222 A.2d at 632; *Wells v. Franklin Broadcasting Corp.*, 403 A.2d 771, 773 (Me. 1979) (under the MHRA, "the proper inquiry is whether age was a substantial, even though perhaps not the only, factor motivating the employee's dismissal" and the plaintiff may recover if "one factor is [her] age and in fact it made a difference in determining whether [she] was to be retained or discharged" such that she "would not have been dismissed but for [her] age").

In this matter, Plaintiff must establish: (1) she was at least forty years old; (2) she met the employer's job performance expectations; (3) the employer took an adverse employment action against her; and (4) she was replaced by a person with roughly equivalent job qualifications. *See*, Phair v. New Page Corp., 708 F. Supp. 2d 57, 63-64 (Me.Dist. 2010)(citing, *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir. 1993)).

> "Establishment of the prima facie case . . . creates a presumption that the employer unlawfully discriminated against the employee," *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981), and the burden of production shifts to the defendant-employer to 'articulate some legitimate, nondiscriminatory reason' for the termination. *McDonnell Douglas*, 411 U.S. at 802; *Lawrence*, slip op. at 5; *Biggins*, 953 F.2d at 1409; *Mesnick*, 950 F.2d at 823. The burden of persuasion remains with the plaintiff-employee at all times. *Lawrence*, slip op. at 5; *Mesnick*, 950 F.2d at 823 (citing *Burdine*, 450 U.S. at 253); *Medina-Munoz*, 896 F.2d at 9.
>
> The presumption of unlawful age discrimination generated by the plaintiff-employee's prima facie showing dissipates, however, provided the employer

14

sustains its burden of production; the plaintiff-employee must then demonstrate that the proffered reason for the adverse employment action was simply a pretext for age discrimination. *Lawrence*, slip op. at 6; *Mesnick*, 950 F.2d at 823; *Connell*, 924 F.2d at 1172. The plaintiff must do more than cast doubt on the employer's justification for the challenged action; there must be a sufficient showing that discriminatory animus motivated the action. *Lawrence*, slip op. at 6-7; *Mesnick*, 950 F.2d at 824; *Villanueva* v. *Wellesley College*, 930 F.2d 124, 127-28 (1st Cir.), *cert. denied, 116 L. Ed. 2d 143,* U.S. , 116 L. Ed. 2d 143, 112 S. Ct. 181 (1991); *Connell*, 924 F.2d at 1172. Direct or indirect evidence of discriminatory motive may do, but "the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus." *Connell*, 924 F.2d at 1172 n.3; *see also Lawrence*, slip op. at 6-7, *Mesnick*, 950 F.2d at 825; *Villanueva*, 930 F.2d at 128."

*Goldman v. First Nat'l Bank*, 985 F.2d 1113, 1117, 1993 U.S. App. LEXIS 2504, *7-9, 61 Fair Empl. Prac. Cas. (BNA) 109, 125 Lab. Cas. (CCH) P57,375, 60 Empl. Prac. Dec. (CCH) P42,050.

For purposes of this Decision and Order, whether couched in terms of the Plaintiff failing in her initial burden of production, or failing at her third stage (i.e., showing a causal relationship through pretext), the practical result is the same. Either way, TAMC is entitled to summary judgment because there is no evidence in the summary judgment record from which one could reasonably infer that Plaintiff's age played any role (and particularly not a substantially motivating role) in Mr. Siddiqui's and Ms. Tweedie's decision to terminate her employment.

First, the Plaintiff never suggested or complained to anyone in management that she was the victim of bullying, harassment, or discrimination based on age. In fact, the Plaintiff admitted at her deposition that she never told anyone in management that she felt she had been bullied or treated poorly because of her age. Second, at her deposition, Ms. Churchill could not identify a single thing that was said by Ms. Baker, Ms. Tweedie,

15

or Mr. Siddiqui, or by anyone else (such as stray remarks or attempts at humor), that suggested or implied that any of them possessed any age-based animus toward her or anyone else.

As to the Plaintiff's initial burden as set forth above, there is significant evidence that she failed to meet the "employer's job performance expectations" in terms of her behaviors. As more exhaustively set forth above, all of the evidence in the record is that the decision to discharge the Plaintiff was based on legitimate and non-discriminatory reasons (i.e., her disciplinary record, her history of engaging in rude and unprofessional behavior, and her failure to acknowledge and meaningfully address the issues despite receiving coaching sessions and discipline). The Plaintiff's age discrimination claim is based on what appears to be merely speculation, conjecture, and surmise. Consequently, TAMC is entitled to summary judgment on this count of Plaintiff's Complaint.

## MHRA Retaliation Claim

To prevail on her MHRA retaliation claim under 5 M.R.S. § 4572(1)(E), the Plaintiff must show: (1) that she engaged in a statutorily protected activity, i.e., that she opposed an act or practice that would be a violation of the MHRA; (2) that TAMC took adverse employment action against her; and (3) that there is a causal link between her protected activity and the adverse employment action, namely, that her protected activity substantially motivated the adverse employment action. *Netherland v. Wesco Distrib., Inc.*, 2015 Me. Super. LEXIS 95, *16-*17; *see Pushard*, 2020 ME 23, ¶ 15, 224 A.3d at 1243; *Johnson*, 2019 ME 176, ¶ 23, 222 A.3d at 631. Plaintiff's opposition must be shown by a report that would bring the unlawful act or practice to the employer's attention or is made to shed

16

light on and in opposition to the unlawful act or practice. *Pushard*, 2020 ME 23, ¶20, 224 A.3d 1239 at 1244. *Complaint* at ¶45.

The Plaintiff produced no evidence that prior to the Plaintiff's discharge, she engaged in any protected activity within the meaning of 5 M.R.S. § 4572(1)(E). Prior to being fired, the Plaintiff did not file a complaint with the MHRC, nor did she complain to or make any report to TAMC about what she perceived as discrimination on the basis of age or any other protected category under the MHRA.

In short, there is no admissible evidence in the record that the Plaintiff engaged in protected activity under § 4572(1)(E). Likewise, and necessarily, there is no admissible evidence in the record that any adverse employment action taken against the Plaintiff was substantially motived by her having engaged in such protected activity. TAMC is therefore entitled to summary judgment in its favor on the MHRA Retaliation Claim.

## CONCLUSION

Accordingly, TAMC's Motion for Summary Judgment is hereby GRANTED. Final judgment in favor of TAMC as to all counts and aspects of Plaintiff's Complaint shall be entered. It is so Ordered.

The Clerk is directed to incorporate this Order upon the docket by reference in accordance with M.R. Civ. P. 79(a).

Dated: 4/29/2022

_____
JUSTICE, MAINE SUPERIOR COURT

ENTERED ON THE DOCKET  4-29-22

17